**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JAMES YBARRA,** | )( | **Civil Action No.:** |
| | )( | **(Jury Trial)** |
| ***Plaintiff,*** | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **CITY OF HOUSTON, TEXAS, and** | )( | |
| **GERALD GOINES, *Individually,*** | )( | |
| | )( | |
| ***Defendants.*** | )( | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE COURT:**

**COMES NOW Plaintiff JAMES YBARRA** complaining of the Defendants **CITY OF HOUSTON** and **GERALD GOINES, *Individually,*** will show the following:

## I. INITIAL FACTS

1. This is a civil rights case brought under 42 U.S.C. §§1983 for violations of James Ybarra's Constitutional rights under the Fourth, Fifth, and Fourteenth Amendments.

2. January 28, 2019, Houston Police Department ("HPD") officer Gerald Goines and other HPD narcotics officers broke through the front door of Dennis and Regina

Tuttle's home in East Houston, based upon a false warrant, and shot them repeatedly until dead, in their living room.

3. At first HPD and former Police Chief Art Acevedo vilified the Tuttles and extolled the virtues of the officers, however, after only a few days the whole debacle started to unravel and revealed a systemic fifteen-year long practice of Officer Goines and other HPD officers of falsifying drug charges by planting drugs, lying in affidavits, police reports, and in court, and convicting dozens of innocent poor people. Without the tragic murder of the Tuttles it would still be going on today. Goines was charged with Capital Murder and awaits trial as do several other narcotics officers with one conviction so far.

4. The families of the Tuttles sued Houston and several officers in 2021 **(Civil Action No.: 4:21cv270)**. That lawsuit alleges that Houston had and has a very serious problem that *is "perverse, widespread, and longstanding"* with HPD Narcotics Squad 15 including *"a pattern of corrupt, reckless, and unconstitutional conduct which endangers our citizens, rather than protecting them. It has been allowed to grow into an entrenched and dangerous subculture with no accountability. It has been allowed to thrive for years through deliberate indifference by supervisors up the chain of command all the way to the offices of the Chief of Police and other policymakers for the City."* Plaintiff Ybarra, herein, alleges the same.

5. This case is about the other victims who, like Plaintiff James Ybarra, could not fight the seasoned, expert lying and planting of drugs by accused Capital Murderer Goines and other HPD narcotics officers were falsely arrested, maliciously prosecuted, and wrongfully convicted of drug felonies causing catastrophic damages. To date SIXTEEN of those victims have had their convictions reversed by the Texas Court of Criminal Appeals. See **Exhibit 1.** Additionally, at least three more of the falsely arrested, maliciously prosecuted, and wrongfully convicted victims have died, never to receive justice or acknowledgment of the wrongs done to them in their lifetime.

## II. JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction as to Plaintiffs' state law claims, if any, pursuant to 28 U.S.C. §1367(a).

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the City of Houston is located, and the events giving rise to Plaintiffs' claims occurred, within the U.S. Southern District of Texas, Houston Division.

## III. PARTIES

8. Plaintiff JAMES YBARRA is resident of Texas.

9. Defendant CITY OF HOUSTON is a municipality located mainly in Harris County, Texas and can be served with process by serving the City Secretary at 901 Bagby, Houston, Texas 77002.

10. Defendant GERALD GOINES is an individual and can be served with process at 20303 Cortina Valley Drive, Cypress, Texas 77433-6333 or wherever he is found.

## IV. ADDITIONAL FACTS

11. James Ybarra (hereinafter sometimes "James") was born in San Antonio, Texas, and moved to Houston in 1979 as his stepfather, John Perez, attended law school and then became a lawyer practicing in Houston, Texas until his death in 2016.

12. James has never been finally convicted of any felony in his life.

13. James enlisted in the U.S. Army and participated in Desert Storm, the war in Iraq. He was discharged in 1991. In 2005 James got married.

14. In 2014 James was a live-in caretaker for his mother who needed around the clock care due to several strokes and being semi-paralyzed and bedridden. James was employed through a home health care agency.

15. The morning of August 7, 2014, James went to get a haircut from a hairdresser/barber who worked out of his apartment on Lockwood Street in east Houston.

16. James had no drugs or other contraband with him.

17. While waiting to get his haircut Houston police (HPD) officer Gerald Goines (hereinafter sometimes "Goines") and several other HPD narcotics officers busted down the front door, pointed a gun at James, and put him in handcuffs. They searched James at least five times finding no contraband nor any other item of note. There were no drugs next to James.

18. Shockingly James was arrested by Goines and the other HPD officers despite having committed no crime nor there being any indication that James had committed a crime. James had acted lawfully at all times.

19. James was brought to the Harris County jail. James was charged with felony possession of a controlled substance 1-4 grams in the 174th Judicial District Court, Case No. 01354989, that same day. James' bond was set at $5000.00. The officer providing the information for the charging of James was officer Goines. Without the false information and paperwork provided by Goines James would not have been arrested nor prosecuted for any crime.

20. Soon after the arrest Goines filed out a police report that stated that handcuffed-behind-his-back James was seen twisting around attempting to reach into his front pocket which was false and Goines knew it to be false. Goines also wrote in the police report that "Officers then observed a black pouch at the ground on the right side of Ybarra." And "Officer found a small quantity of marijuana and

two ecstasy tablets inside the black pouch." These statements were also false and Goines knew them to be false.

21. According to his police report Officer Goines was the "officer of record" on the case and "took possession of all articles found at the scene."

22. Officer Goines further reported in his police report that the "1 gram of ecstasy" found in the black pouch field tested positive for ecstasy.

23. Four days after his arrest James bonded out of the Harris County jail at a cost of $500.00.

24. James hired a lawyer who he paid around $2000.00, however, that lawyer eventually withdrew from James' case when James could not pay the lawyer's fees as fast as the lawyer required.

25. James then hired a second lawyer and paid him around $7000.00.

26. James had to appear in the 174th District Court on several occasions for required court settings.

27. James eventually lost his job with the home health care provider due to his pending criminal charge around January 2015. As a result James could not continue to pay his second lawyer and that lead to James being appointed a lawyer due to indigency.

28. Despite James' lawyers' efforts to have the case dismissed asserting James' innocence the prosecution asserted that Goines' testimony was enough to convict

James and send him to prison for many years. Prosecutors offered a plea bargain for a guilty plea in exchange for "time served."

29. In early November 2015 James was a few minutes late to court, not due to any fault of his own, and was jailed for being late. Because of losing his job and his indigency he could not bond out.

30. At his next Court appearance November 6, 2015, James was taken from the jail to court. Prosecutors again offered a plea bargain for a guilty plea in exchange for "time served" and then James could get out of jail immediately. If not James would return to jail for the next court setting. James' appointed lawyer said because of Goines' testimony James may very likely be found guilty and sentenced to many years in prison. Faced with these fabricated charges brought by Gerald Goines, out of money and a job, and wholly despondent and seeing no alternatives James took the plea bargain and was convicted of felony drug possession. James has suffered at least great fear, depression, sadness, and anxiety since his false arrest. He has not found gainful employment due to the false public record of felony conviction for methamphetamine and lost several hundreds of thousands of dollars in lost wages.

31. January 28, 2019, Goines and other HPD narcotics officers broke through the front door of Dennis and Regina Tuttle's home in East Houston, based upon a false warrant, and shot them repeatedly until dead, in their living room.

32. At first HPD and then Police Chief Art Acevedo vilified the Tuttles and extolled the virtues of the officers, however, after only a few days the whole debacle started to unravel and revealed a systemic fifteen-year long practice of Officer Goines and other HPD officers of falsifying drug charges by planting drugs, lying in affidavits, police reports, and in court, and convicting dozens of innocent poor people just as happened to James. Without the tragic murder of the Tuttles it would still be going on today. Goines was charged with Capital Murder and awaits trial as do several other narcotics officers with one conviction so far.

33. To date SIXTEEN Goines' victims including James have had their convictions reversed by the Texas Court of Criminal Appeals where Goines planted drugs and falsified police reports indicating the victims' possessed drugs**.** The 174th District Court dismissed James' case on February 6, 2024. **Exhibit 2.** Additionally, at least three more of the falsely arrested, maliciously prosecuted, and wrongfully convicted victims have died, never to receive justice or acknowledgment of the wrongs done to them in their lifetime.

## CAUSES OF ACTION[1] PLAINTIFF'S CIVIL RIGHTS CLAIMS

34. Plaintiff incorporates all preceding paragraphs by reference herein.

[1] Plaintiff asserts there may be other causes of action not listed herein which plaintiff asserts and does not abandon by failure to list.

35. James had the right under the Fourth, Fourteenth, and Fifteenth Amendments to the United States Constitution to be secure in his person, home, and property against unreasonable search and seizure, to not to arrested and prosecuted without probable cause without probable cause are protected against deprivation by state actors by the Fourteenth Amendment.

36. Pursuant to 42 U.S.C §1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights secured by the Constitution and laws, shall be liable to the injured party in action for redress.

37. Each Defendant is a "person" within the meaning of 42 U.S.C. §1983.

38. Each Defendant, jointly, severally, or both, deprived James of his rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment.

39. The acts and omissions of each Defendant were a proximate cause and cause-in-fact of

James' injuries and damages.

**<u>42 U.S.C. §1983 – MUNICIPAL LIABILITY – POLICY, CUSTOM OR PRACTICE</u>**

40. Plaintiff incorporates all preceding paragraphs by reference herein.

41. Municipalities may be held liable under 42 U.S.C. §1983 for constitutional deprivations committed pursuant to a policy, custom, or practice of the municipality. Even absent an officially adopted policy, a custom or practice that is so persistent and widespread that it fairly represents a municipal policy will support liability against the municipality. A pattern of unconstitutional conduct may be shown on the part of municipal employees who are not policymakers.

42. The City of Houston at all times relevant to this complaint has maintained policies, customs or practices that caused and were the moving force behind the violation of James' constitutional rights described in this Complaint.

43. The acts and omissions of each individually named Defendant were caused by said policies, customs or practices.

44. The City of Houston's policymakers such as their Mayors Parker and Brown, and Police Chiefs McClelland and Brown as well other Mayors and Chiefs had actual or constructive knowledge about said policies, customs or practices. The City of Houston's policymakers were deliberately indifferent as to said policies, customs or practices.

45. Said policies, customs and practices include the following:

a. The City's policy or custom of allowing its officers to plant evidence including drug evidence to convict innocent and other people of crimes;

b. The City's policy or custom of allowing officers and supervisors to remain in the narcotics division indefinitely, without term limits. Goines was allowed to work as a narcotics officer for at least 22 years before James' conviction and only left after he murdered the Tuttles in 2019 in the "Harding Street Raid." Narcotics enforcement is a field known to pose high risk for corruption given the covert nature of the work involving CIs, cash, drugs, and weapons. Generally recognized best practices require regular rotation out of the division of narcotics officers and supervisors to prevent the development, as happened in this case, of a corrupt, dangerous, and illegal subculture within the division.

c. The City's policy or custom of not requiring or conducting regular audits of the HPD narcotics division. Prior to the incident, HPD had not audited the HPD narcotics division since 2000.

d. The City's policy or custom of allowing narcotics officers to use false affidavits to obtain search warrants, including no-knock search warrants.

e. The City's policy or custom of allowing narcotics officers to falsify offense reports and supplemental reports.

f. The City's policy or custom of allowing narcotics officers to falsify time sheets, including overtime forms.

g. The City's policy or custom of allowing narcotics officers to violate policies relating to custody of narcotics and weapons.

h. The City's policy or custom of not using body cameras when conducting raids.

HPD's Official Written Policies

46. The City of Houston had written policies that caused James to have his constitutional rights violated which include:

a. SOP 200/1.02 on Activity Authorization and Notification, which allowed execution of warrants involving forced entry without the presence of the case agent's supervisor. Goines' supervisor was not present during James' arrest.

b. SOP 200/1.05 on Narcotics Operational Plan, which allowed execution of warrants by narcotics officers without requiring them to wear and use body-worn cameras.

c. SOP 200/1.12 on Search warrants/Buy Busts and Open Air Investigations, which allowed narcotics officers to execute search warrants without supervisory review of the investigative efforts which support the search warrant affidavit. This SOP also allowed HPD narcotics entry teams to make entry without requiring them to wear and use body-worn cameras. policies and procedures.

**STATE MALICIOUS PROSECUTION**

47. Plaintiffs incorporate all preceding paragraphs by reference herein.

48. The facts alleged constitute the Texas state cause of action for malicious prosecution.

The essential elements of a claim for malicious prosecution are: (1) the institution of proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) damages to the plaintiff. If the underlying action was a criminal prosecution, the plaintiff must also have been innocent of the charges which James was.

RATIFICATION

49. Neither Goines nor any HPD officer has been disciplined for any actions related James' case nor for the Fifteen other cases where the Texas Court of Criminal Appeals overturned a drug conviction due Goines' involvement.

**42 U.S.C. §1983 – FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE**

50. Plaintiff incorporates all preceding paragraphs by reference herein.

51. The City of Houston failed to properly train, supervise, and discipline officers within the Narcotics Division including Goines. More specifically, the City failed to train, supervise, and discipline its narcotics officers regarding filling out truthful

police reports and establishing actual real probable cause before an arrest is made and a prosecution pursued and by wearing body cameras in raids.

52. The City of Houston and its chiefs of police were deliberately indifferent to the foreseeable result that this failure to train would violate the constitutional rights of citizens like James.

53. HPD and its policymakers further knew that mandating the training identified above would prevent wrongful arrests, prosecution without probable cause and wrongful convictions including James.

54. As a result of these failures, James suffered the injuries identified in this complaint, including severe emotional distress, pain, and ultimately death.

42 U.S.C. §1983 – FAILURE TO PROMULGATE ADEQUATE POLICIES

55. Plaintiffs incorporate all preceding paragraphs by reference herein.

56. The City of Houston failed to promulgate adequate policies to prevent the violations of Plaintiffs' Constitutional rights. Specifically, HPD failed to promulgate sufficient policies including the following:

a. HPD should have mandated but failed to mandate the use of body-worn cameras.

b. HPD should have mandated but failed to mandate that supervisors, including lieutenants, be present during raids.

57. Based on these failures, Defendants violated James constitutional rights as described herein. In contrast, had these policies been in force, HPD and its policymakers, including the chiefs of Police, Mayors, and others would have prevented the violation of those rights.

58. By ignoring these important policies, HPD and its policymakers were deliberately indifferent to the foreseeable result that such failure would become the moving force behind Constitutional violations. In particular HPD and its chiefs knew that there would result more wrongful arrests and convictions.

59. HPD and the Chief of Police further knew that mandating the policies identified above, would prevent false arrests and wrongful convictions, thereby preventing deprivation of constitutional rights and injuries to James

**DAMAGES**

60. Plaintiff incorporates all preceding paragraphs by reference herein.

61. Plaintiff has suffered:

a. Pecuniary loss sustained in the past, including lost wages and opportunity, and attorney's and other fees related to the criminal prosecutions

b. Pecuniary loss that, in reasonable probability, will be sustained in the future.

c. Mental anguish sustained in the past,

d. Mental anguish that, in reasonable probability, will be sustained in the future.

e. Attorney's fees and expenses.

f. Exemplary damages against each individually named Defendant. Plaintiff is entitled to exemplary damages because the individual Defendants' actions were motivated by malice and/or involved reckless or callous indifference to James' federally protected rights. The individually named Defendants engaged in these actions and omissions intentionally, willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for, James constitutionally protected rights.

**g**. Pursuant to 42 U.S.C. §1988, Plaintiffs seek and are entitled to recover attorney's fees and costs, including expert fees.

## JURY DEMAND

62. Plaintiff hereby demands a trial by jury.

## PRAYER

63. WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that all Defendants be cited to appear and answer herein, and that Plaintiffs have judgment against Defendants, jointly and severally, for actual damages, exemplary damages against all individual Defendants, pre- and post-judgment interest, attorney's fees and costs of court, including expert fees, and all further relief, both legal and equitable, as to which Plaintiffs show themselves justly entitled.

Respectfully Submitted,

/s/ *Randall L. Kallinen*
Randall L. Kallinen
KALLINEN LAW PLLC
State Bar of Texas No. 00790995
U.S. So. Dist. of Texas Bar No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713/320-3785
FAX: 713/893-6737
E-mail: AttorneyKallinen@aol.com

Alexander C. Johnson
KALLINEN LAW PLLC
State of Texas Bar No. 24123583
U.S. So. Dist. of Texas Bar No.: 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573/340-3316
Fax: 713/893-6737
Email: alex@acj.legal

ATTORNEYS FOR PLAINTIFF